**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Blair E. Reed (State Bar No. 316791)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
       breed@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE ABDELSAYED and FRANK CIGLAR, individually and on behalf of all others similarly situated,<br><br>     *Plaintiffs,*<br><br>v.<br><br>MARRIOTT INTERNATIONAL, INC., a Delaware corporation;<br><br>     *Defendant.* | **'21CV402  BEN JLB**<br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiffs George Abdelsayed and Frank Ciglar (collectively, "Plaintiffs"), by their undersigned attorneys, bring this class action complaint against Marriott International, Inc. ("Defendant" or "Marriott"). Plaintiffs' allegations are based upon personal knowledge as to their own acts and upon information and belief as to all other matters.

## NATURE OF ACTION

1.    This is a class action lawsuit on behalf of consumers concerning the amounts they pay for Defendant's hotel rooms, and the false, misleading, and deceptive advertising Defendant has employed to get consumers to pay those prices.

2.    For at least the last decade, Marriott has used unlawful trade practices called "drip pricing" and "partition pricing" (collectively, "drip pricing") when marketing and advertising its hotel rooms. Marriott engages in drip pricing by falsely baiting consumers into believing they are getting a bargain, and then hides and disguises a portion of a hotel room's daily rate from consumers. Marriott does this through a range of tactics, including, but not limited to, completely hiding price terms, mischaracterizing and hiding terms in small print, or adding various charges throughout the vending process. These fees include, but are not limited to "resort fees," "amenity fees," "destination fees," or "taxes and fees."

3.    The effect of these fees is simple. Consumers who are shopping for hotel rooms, either on Marriott's own website or third-party online travel agency websites ("OTAs") such as Expedia, Kayak, or Travelocity, are duped into believing a Marriott hotel room is cheaper than it actually is. Marriott is incentivized to engage in these practices because it can capture consumers who choose Marriott because of the "bargain" price advertised. Marriott has profited enormously from these practices.

4.    Marriott is a world-famous hotel corporation. Marriott owns, franchises, and manages hotels throughout the United States, including

CLASS ACTION COMPLAINT

approximately 60 hotel properties located in the San Diego District.  Marriott conducts its hotel business through various corporate entities operating under numerous trade names.[1]  It offers lodging at its hotels to California residents, including through its online reservation website and through various OTAs.  These websites are supposed to allow consumers to obtain accurate information about Marriott's hotel rooms and allow consumers to accurately compare Marriott's hotel room prices to that of other hotels as well as make hotel reservations.

5.     Marriott markets, advertises, and promotes its hotel rooms by advertising daily room rates on its own website and the websites operated by OTAs. Marriott's official website and the websites operated by the OTAs enable consumers to search for and sort through hotel accommodations by price according to the listed daily room rate.  Emphasis is placed on daily rates and prices through the search and sorting functions of these sites, and consumers are able to cross-compare prices among various hotels in real time.  Countless consumers use the websites operated by Marriott and the OTAs to compare the price of hotel rooms offered by Marriott and other hotels and to select and book a hotel room online.

6.     In fact, JD Power and Associates found that price and location are among the top factors in picking a hotel, according to a new study of more than 200,000 hotel guests from eight countries.[2]  Marriott capitalizes on this fact by positioning itself as having cheaper rooms, when in reality, its rooms contain hidden fees, and/or are more expensive than the advertised price.

---

[1] Marriott hotels operate under at least the following trade names" Starwood, St. Regis, The Luxury Collection, W, Westin, Le Méridien, Sheraton, Tribute Portfolio, Four Points by Sheraton, Aloft, Element, The Ritz-Carlton, Design Hotels, Bvlgari Hotels & Resorts, Edition, JW Marriott, Autograph Collection Hotels, Renaissance Hotels, Marriott Hotels, Delta Hotels and Resorts, Gaylord Hotels, AC Hotels by Marriott, Courtyard by Marriott, Residence Inn by Marriott, Springhill Suites by Marriott, Fairfield Inn & Suites, TownePlace Suites by Marriott, and Moxy Hotels.

[2] https://skift.com/2013/09/30/price-and-location-are-the-most-important-factors-in-picking-a-hotel/ (last visited March 3, 2020)

CLASS ACTION COMPLAINT

7.     Marriott charges fees that are characterized in different ways, some of which are mandatory which it refers to as "resort fees," "destination amenity fees," "amenity fees," or "taxes and fees" (referred to collectively hereafter as "resort fees") on a daily basis for a room at many of its hotels.  However, Marriott does not include these daily fees in the room rate it advertises on its website in the room rate advertised by the OTAs, thereby depriving consumers of the ability to readily ascertain and compare the actual price of a room at a Marriott hotel to the bait price of the bargain Marriott claims it is offering, or to the hotel rooms offered by Marriott's competitors and at other Marriott hotels.

8.     After the initial price deception, when consumers select a room rate and provide their credit card and other personal information to book a room, Marriott then represents that the daily room rate at the hotel is less than it actually is because it does not include the mandatory resort and other fees that Marriott adds to the daily room charge.  In many instances, Marriott includes the resort fees as part of a total charge called "Taxes and Fees," thus misleading consumers to believe the additional fees they are paying are government-imposed, rather than a separate daily charge imposed by and paid to Marriott.  In some instances, the resort fees cover costs, such as parking or wi-fi service, that Marriott advertises it provides as free or complimentary or, alternatively, requires hotel guests to pay for separately, even though Marriott has required them to pay the resort fee.  When a consumer books online, they cannot tell what is included in the room rate, what is included in the "fee," what is truly "free" or complimentary, or what they will be separately charged for upon arrival and/or at checkout, well past the point the consumer could make an informed decision.

9.     Plaintiffs saw, read, and relied on Defendant's false and misleading representations that Marriott's hotel rooms were cheaper than they actually were. Plaintiffs would not have purchased or booked a room at a Marriott hotel room had

CLASS ACTION COMPLAINT

they known the true price.  Thus, Plaintiffs bring this class action on behalf of themselves and other purchasers of Marriott hotel rooms action to force Marriott to stop utilizing "drip pricing" and advertise the true price Marriott hotel rooms, not its false and misleading price, to consumers.  Plaintiffs assert claims against Defendant for violations of the California's Consumers Legal Remedies Act ("CLRA"), California's False Advertising Law ("FAL"), and California's Unfair Competition Law ("UCL"), as well as for negligent misrepresentation, concealment/failure to disclose, and unjust enrichment.

## THE PARTIES

10. Defendant **Marriott International, Inc.** is a Delaware corporation and is headquartered at 10400 Fernwood Road, Bethesda, MD 20817.  Marriott manages and franchises a broad portfolio of hotels and lodging facilities throughout the United States and abroad, including approximately 60 facilities located in the San Diego District.

11. Plaintiff **George Abdelsayed** resides in San Diego, California.  Mr. Abdelsayed booked a room at the Coronado Island Resort and Spa through Marriott's app in or around July 2020.  Before booking his room, Mr. Abdelsayed saw, read, and relied on the room price advertised by Marriott.  Subsequently, Mr. Abdelsayed was charged a resort fee for his stay.  Mr. Abdelsayed learned that Defendant had misleadingly advertised the hotel room rates and charges he was paying for, and was unaware he was paying additional fees at the time he booked his room.  Mr. Abdelsayed would not have booked a Marriott hotel room, or paid the same price for the Marriott hotel room, had he known the truth about Defendant's prices.

12. Plaintiff **Frank Ciglar** resides in Castro Valley, California.  Mr. Ciglar booked a room at a Marriott hotel through Marriott's website in or around September 2019.  Before booking his room, Mr. Ciglar saw, read, and relied on the room price

CLASS ACTION COMPLAINT

advertised by Marriott.  Subsequently, Mr. Ciglar was charged a resort fee for his stay.  Mr. Ciglar learned that Defendant had misleadingly advertised the hotel room rates and charges he was paying for, and was unaware he was paying additional fees at the time he booked his room.  Mr. Ciglar would not have booked a Marriott hotel room, or paid the same price for the Marriott hotel room, had he known the truth about Defendant's prices.

13.    Plaintiffs are reasonable consumers and are not required to scrutinize advertisements to ferret out misleading facts and omissions, and cannot ascertain facts that are in Defendant's exclusive control.  Defendant had exclusive control over its pricing practices deliberately placed that information on its websites and OTAs. Defendant, but not Plaintiff, knows and was warned that this advertising is in violation of federal regulations and state law.

14.    Plaintiffs reasonably assumed that the hotel reservations would conform to the prices advertised by Defendant.  However, instead of receiving the benefit of a bargain room rate as quoted, Plaintiffs paid hotel charges that were not as advertised, in violation of federal and state regulations.

15.    Plaintiffs were unable to, and will not be able to in the future, effectively compare hotel prices due to Defendant's misleading and deceptive pricing scheme.  Until Defendant changes its practices, Plaintiffs will be unable to determine what their true hotel charges will be and what a specific fee covers, as some Marriott hotels do not disclose what is and is not included in which fees, and other Marriott hotels state that an amenity is both complimentary when it in fact is being charged for in a fee.

16.    If Defendant changes its practices and complies with federal and California regulations, Plaintiffs remain interested in purchasing and booking Defendant's hotel rooms.

**JURISDICTION AND VENUE**

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A).  There are more than 100 Class Members, and the aggregate claims of all members of the proposed Class exceed $5,000,000.00, exclusive of interest and costs.  At least one Class Member is a citizen of a state different than at least one defendant.

13.     This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over Marriott International, Inc. because it conducts substantial business within California and operates hotels throughout the Southern District of California, including San Diego County.

15.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant transacts significant business within this District and because Plaintiff Abdelsayed purchased a stay at a Marriott hotel room in this District.

**FACTUAL BACKGROUND**

16.     The emergence of OTAs has allowed consumers to shop for and compare multiple hotel rooms and hotel brands with the click of a button. Consumers may also use the hotels' own websites to cross-compare prices and availability.  Thus, consumers are able to make informed decisions about where to stay based on the advertising and marketing materials found on OTAs and hotel websites.

17.     However, the use of online booking and OTAs has led to the deceptive business practice of failing to include resort fees or other fees in the advertised price. For example, Marriott will initially advertise a room rate that does not include a resort fee, but then include it in the final charges a consumer is required to pay.  This is classic false bargain pricing and bait advertising enabled by drip and partition pricing through manipulation of internet advertising.  Marriott charges these

CLASS ACTION COMPLAINT

additional resort fees, which can amount to as much as $95 a day at some Marriott's properties while falsely appearing to deliver a bargain discount to increase its revenues without appearing to raise the room rate at its hotels. Marriott does not include these fees in the room rate because doing so would effectively increase the price of a hotel room and consequently make its hotels less price competitive to consumers when compared with the bargain price it claims to be offering and to other hotels.

18.     Marriott's practice of initially advertising only part of a price and then later revealing other charges as the consumer completes the buying process has been labeled "drip pricing" by the Federal Trade Commission ("FTC"). In November 2012, the FTC warned the hotel industry that drip pricing as it pertains to charging resort fees violates federal consumer protection law when it misrepresents the price consumers pay for their hotel rooms. The FTC specifically warned the hotels that the largest and most prominent price for a hotel room should include the resort fee, and should be provided to the consumer up front, and not later in the checkout process, to avoid being deceptive drip pricing. Marriott received one of the FTC's warning letters.

19.     Notwithstanding these warnings from the FTC, Marriott continues to bait consumers with false bargain advertised room prices that either do not include its resort fees and/or deceptively obfuscate them, both on its own website and the websites operated by OTAs. Marriott has continued this deceptive practice because it has become a key profit center for the company, as it has reaped hundreds of millions of dollars from expanding its use of resort fees over the past decade.

20.     Marriott owns, manages or franchises at least 189 properties worldwide that charge consumers resort fees ranging from $9 to as much as $95 per day. By charging consumers fees in addition to the daily amount consumers must pay for their rooms, Marriott makes hundreds of millions of additional dollars in revenue

CLASS ACTION COMPLAINT

without appearing to increase the price for which it initially offers its rooms. Marriott's unlawful trade practices has affected California consumers, as Marriott has charged resort and other deceptively labelled fees to tens of thousands of California consumers over the years, charging those consumers millions and millions of dollars.

21.     Marriott also exercises control over the fees its hotels charge through its resort fee policies which give it the authority to determine what fees can be charged by the hotels it owns, manages or franchises.  Although Marriott's Franchise Agreements typically allow its franchisees to set their own rates for guest room charges, these franchisees must still comply with Marriott's resort fee policy, which requires Marriott's approval and allows Marriott to control the resort fee they are permitted to charge.  Moreover, under Marriott's Franchise Agreements, Marriott determines whether charges or billing practices are misleading or detrimental, including resort fees and other incremental fees or services that guests would normally expect to be included in the hotel room charge.

### *The Booking Process Is Misleading*

22.     When a consumer uses Marriott's website to search for a hotel room by destination and date, Marriott's website will list various hotels and rooms with matching availability:



CLASS ACTION COMPLAINT

23.     At this initial stage, the quoted daily room rate for each hotel does not include or mention the mandatory resort fee a consumer must pay.  Once a consumer selects a particular property, Marriott's website directs the consumer to another webpage that lists the rooms available at the selected property, along with the daily rates for those rooms.  This webpage displays a light blue box at the top of the page that states that a "daily destination amenity fee will be added to the room rate":

24.     If a consumer then selects a specific room, Marriott's website produces a page where consumers can "review reservation details."  The "review reservation details" page shows a picture of the room, details of the reservation, a drop-down menu called "summary of charges," and a "USD subtotal" which includes the "USD/Night" and "USD Taxes and Fees."  A photo of this page is shown below:



//

//

//

//

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

25.    If the consumer then clicks the "summary of charges" drop-down menu, the overall costs include a "Destination Amenity Fee" and "Estimated government taxes and fees."  A list of "additional charges" can also be seen, including "On-site parking" and "Valet parking" fees:



26.    However, at some properties owned, managed, or franchised by Marriott, no amenity fee is charged at all.  When a consumer reserves a room at one of these properties, the "review reservation details" page is largely the same, except that the "USD Taxes and Fees" total does not include an amenity fee:

CLASS ACTION COMPLAINT

10

27.     The difference between these properties highlights Marriott's misleading tactics.  Marriott presents "USD Taxes and Fees" to represent one component of the hotel room charge, regardless of whether it includes an amenity fee or not.  Additionally, Marriott uses phrases like "Reserve Your Room Before Time Runs Out" to encourage consumers to move quickly through the booking process.

28.     Unfortunately for consumers,  Marriott's website is also misleading because of inconsistent representations regarding what amenities are covered by the

CLASS ACTION COMPLAINT

1    amenity fee or are offered complimentary.  For example, Marriott advertises that the

2    amenity fee "includes high speed Internet/resort equipment rentals/fitness classes and

3    more":



15   29.   Despite indicating that these services are included in the amenity fee,

16   Marriot advertises that fitness classes are "[c]omplimentary" and that the "[f]itness

17   center is free of charge for hotel guests":

18   30.   Marriott likewise fails to include resort fees and other similar fees in the

19   rates advertised by OTAs.  For example, Expedia does not include or even mention

20   any resort or amenity fee in the advertised rates.  In fact, it takes several pages for the

21   consumer to get to the "Details" of what is included in the "Taxes and Fees" and

22   "Mandatory property fee."  There, "Property fees" include a "Resort fee" that covers

23   "Beach loungers," "Fitness/yoga classes," "Sporting facilities or equipment,"

24   "Internet access," and "Additional inclusions":

25   //

26   //

27   //

CLASS ACTION COMPLAINT



31.    Again, just like Marriott's own websites, OTAs like Expedia may advertise that the room includes free Internet, while at the same time indicate that "Internet access" is included in the "Resort fee."  OTAs like Expedia also encourage consumers to book quickly through the use of a stopwatch and banners like "Only five left of this room type on Expedia."

32.    All of these tactics are detrimental to consumers because the advertised total for Marriott's hotel rooms are not the true total. Consumers may not be unable to see or find the details of the charges, and thus do not know that they may be required to pay additional fees once they arrive at the hotel.  Likewise, consumers may not know what is included in the total amount, and whether a resort fee is even included or what is included in that resort fee.

CLASS ACTION COMPLAINT

33.     Additionally, Marriott also uses strike through price bargaining to offer consumers bait prices.  This practice violates the prohibition against misleading bargain advertising set forth in 16 CFR § 233.1: "[Where] where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price."  Likewise, this practice violates 16 CFR § 238.0: "Bait advertising is an alluring but insincere offer to sell a product or service which the advertiser in truth does not intend or want to sell.  Its purpose is to switch consumers from buying the advertised merchandise, to sell something else, usually at a higher price or on a basis more advantageous to the advertiser.  The primary aim of a bait advertisement is to obtain leads as to persons interested in buying merchandise of the type so advertised."

34.     The drip and partition pricing is easily seen on Marriott's website:



35.     However, when consumers go to reserve the room, the prices suddenly include additional fees, and the rates are no longer the same as the strike-through price advertised:

//

//

//

//

CLASS ACTION COMPLAINT



36.     Defendant does not disclose any of these costs up front, and uses these tactics to trick consumers into thinking that they are getting a bargain price, when in reality, they are not.

//

CLASS ACTION COMPLAINT

1

## **CLASS ACTION ALLEGATIONS**

2      37.    Plaintiffs seek to represent a class defined as all persons in the United

3  States who purchased, or booked a stay at a Marriott owned or franchised hotel room

4  and stayed in any such room for overnight accommodation and were charged an

5  amount therefore that was higher than the room rate quoted or advertised per day

6  plus government-imposed taxes and government imposed in their respective state of

7  citizenship on or after March 3, 2012 to the present (the "National Class").  Excluded

8  from the Class are governmental entities, Defendant, Defendant's affiliates, parents,

9  subsidiaries, employees, officers, directors, and co-conspirators, and anyone who

10  purchased or booked a stay at a Marriott owned or franchised hotel room for resale.

11  Also excluded is any judicial officer presiding over this matter and the members of

12  their immediate families and judicial staff.

13      38.    Plaintiffs also seek to represent a subclass defined as all members of the

14  Class who purchased, or booked a stay at a Marriott owned or franchised hotel room

15  and stayed in any such room for overnight accommodation and were charged an

16  amount therefore that was higher than the room rate quoted or advertised per day

17  plus government-imposed taxes and government imposed in their respective state of

18  citizenship within the state of California (the "California Subclass") at any time from

19  March 3, 2012 to the present.

20      39.    Members of the Class and the Subclass are so numerous that their

21  individual joinder herein is impracticable.  The precise number of Class Members

22  and their identities are unknown to Plaintiffs at this time but will be determined

23  through discovery of Defendant's records.  Class Members may be notified of the

24  pendency of this action by mail, email, and/or publication.

25      40.    This suit seeks damages and equitable relief for recovery of economic

26  injury on behalf of the Class and Subclass.  Plaintiffs reserve the right to modify or

27  expand the definition of the Class and Subclass to seek recovery on behalf of

CLASS ACTION COMPLAINT

additional persons as warranted as facts are learned in further investigation and discovery.

41.    Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.  These common legal and factual questions include, but are not limited to:

(a)    Whether the marketing and advertisements for the Marriott hotel rooms included false and/or misleading statements and/or omissions;

(b)    Whether Defendant's conduct violated the CLRA;

(c)    Whether Defendant's conduct violated the FAL;

(d)    Whether Defendant's conduct violated the UCL;

(e)    Whether Defendant was unjustly enriched; and

(f)    Whether Defendant's conduct was fraudulent.

42.    Plaintiffs' claims are typical of the claims of the proposed Class and of the Subclasses they seek to represent.  Each Class Member was subjected to the same illegal conduct, was harmed in the same way and has claims for relief under the same legal theories.

43.    Plaintiffs are adequate representatives of the Class and of the Subclass they seek to represent because their interests do not conflict with the interests of the Class and Subclass Members they seek to represent, they have retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class and Subclass Members will be fairly and adequately protected by Plaintiffs and their counsel.

44.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass Members.  Each individual Class and Subclass Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the

CLASS ACTION COMPLAINT

delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of a defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
**Violations of California's Consumers Legal Remedies Act ("CLRA"),
California Civil Code § 1750, *et seq.*
(Injunctive Relief Only)**

45.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

46.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendant.

47.    Civil Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  Civil Code § 1770(a)(20) prohibits "[a]dvertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but not limited to, shelf tags, displays, and media advertising in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product."

48.    Defendant violated Civil Code § 1770(a)(9), and (a)(20) marketing and falsely representing a lower discounted bargain hotel rental price online than what consumers were actually charged.

49.     Marriott never intended to sell its hotel rooms at the discounted rate and for the prices advertised online.

50.     Plaintiffs and the members of the Class and California Subclass have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for Marriott's hotel rooms that they otherwise would not have incurred or paid.

51.     On information and belief, Marriott committed these acts knowing it would harm Plaintiffs and Class Members.

52.     Prior to the filing of this Complaint, CLRA notice letters were sent to Defendant that comply in all respects with California Civil Code §1782(a). Plaintiffs' counsel sent Defendant the letters via certified mail, return receipt requested, advising Defendant that they are in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom.

## **COUNT II**
### **Violations of California's Unfair Competition Law ("UCL")**
### **Business & Professions Code § 17200, *et seq.***

53.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

54.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and California Subclass.

55.     Defendant violated the unlawful prong of the UCL by violating Civil Code § 1770(a)(5), Business & Professions Code § 17500, and the Federal Trade Commission Act ("FTCA") which prohibits "unfair or deceptive acts or practices in or affecting commerce" and false advertisements under 15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a), as described above.

56.     Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that Defendant's conduct is substantially injurious to consumers and offends public policy.

57.     Defendant's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

58.     Plaintiffs and the members of the Class and California Subclass have suffered harm as a result of the violations of the UCL because they have incurred charges and/or paid monies they otherwise would not have incurred or paid.

### COUNT III
**Violation of California's False Advertising Law**
**Business & Professions Code § 17500, *et seq.***

59.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

60.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant and on behalf of the California Subclass against Defendant.

61.     California's FAL (Bus. & Prof. Code §§17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

62.     Throughout the Class Period, Defendant committed acts of false advertising, as defined by the FAL, by using false and misleading statements to promote the sale hotel rooms as described above, and including, but not limited to,

CLASS ACTION COMPLAINT

falsely representing that its hotel rooms were a lower discounted bargain hotel rental price online than what consumers were actually charged.

63.    Defendant knew or should have known, through the exercise of reasonable care, that their statements were untrue and misleading.

64.    Defendant's actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

65.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiffs and members of the Class and the California Subclass have suffered injury and actual out-of-pocket losses as a result of Defendant's FAL violation because: (a) Plaintiffs and the Class and the California Subclass would not have purchased or booked Defendant's hotel rooms had they known the true price of the rooms; (b) Plaintiffs and the Class and the California Subclass paid an increased price for the hotel rooms; and (c) the rooms did not have the promised quantity or value.

66.    Plaintiffs bring this action pursuant to Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective disclosures to consumers.  Plaintiffs and the Class and the California Subclass are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

## COUNT IV
### Concealment/Failure to Disclosure

63.    Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

64.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

21

CLASS ACTION COMPLAINT

67.     As discussed above, Defendant provided Plaintiffs and Class and Subclass members with false or misleading material information and intentionally failed to disclose material facts about its hotel rooms, including but not limited to failing to disclose to Plaintiff and Class Members that Defendant would charge additional fees for its hotel rooms beyond the advertised price, including amenity fees, resort fees, destination fees, and others, as well as falsely representing a lower discounted bargain hotel rental price online than what consumers were actually charged.

65.     Defendant had exclusive knowledge of the falsity of the representations at the time of sale.  The defect (the actual price of the hotel rooms upon checkout) is latent and not something that Plaintiffs or the Class Members, in the exercise of reasonable diligence, could have discovered independently prior to purchase.  The defect would not be disclosed by careful, reasonable inspection by the purchaser.

66.     Defendant had the capacity to, and did, deceive Plaintiffs and the Class Members into believing that they would pay the advertised price for the hotel rooms upon checkout, when in reality, Plaintiffs and the Class Members were charged more than the advertised price for the hotel rooms upon checkout.

67.     Defendant undertook active and ongoing steps to conceal the actual price of the hotel rooms.  Plaintiffs are aware of nothing in Defendant's advertising, publicity, or marketing materials that discloses the truth about the actual price of the hotel rooms, including an adequate explanation of fees that are charged, despite Defendant's awareness of the actual price that consumers would pay.

68.     The facts concealed and/or not disclosed by Defendant to Plaintiffs and the Class Members are material facts in that a reasonable person would have considered them important in deciding whether to purchase a hotel room.

69.     Defendant had a duty to disclose accurate information regarding the actual price that consumers would pay for its hotel rooms upon checkout.

CLASS ACTION COMPLAINT

70.   The misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class and Subclass members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class and Subclass members to purchase and book Defendant's hotel rooms.

71.   The fraudulent actions of Defendant caused damage to Plaintiffs and Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

**COUNT V**
**Unjust Enrichment**

72.   Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

73.   Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

74.   Plaintiffs and Class and Subclass members conferred benefits on Defendant by purchasing and booking Defendant's hotel rooms.

68.   Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class and Subclass members' purchases its hotel rooms. Retention of those moneys under these circumstances is unjust and inequitable because Defendant falsely represented a lower discounted bargain hotel rental price online than what consumers were actually charged.

75.   These misrepresentations caused injuries to Plaintiffs and Class and Subclass members because they would not have purchased or booked Defendant's hotel rooms if the true facts were known.

76.   Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class and Subclass members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and Class and Subclass members for its unjust enrichment, as ordered by the Court.

CLASS ACTION COMPLAINT

## COUNT VI
### Negligent Misrepresentation

77.　Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

78.　Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

79.　Defendant represented that its hotel rooms were cheaper than they were by advertising the hotel rooms at a lower price than the actual price that consumers would pay upon check out.  To communicate this representation and to convince Plaintiff and the Class Members to purchase the hotel rooms, Defendant supplied Plaintiffs and the Class Members with information, namely the misrepresentations found on Defendant's websites and third-party booking websites.  Defendant knew, or should have known, that this information was false and/or misleading to Plaintiffs and the Class Members.

80.　The misrepresentations concerned material facts about the price of the hotel rooms that influenced Plaintiffs and the Class Members to purchase the hotel rooms.

81.　At the time Defendant made the misrepresentations, Defendant knew or should have known that the misrepresentations were false or Defendant made the misrepresentations without knowledge of their truth or veracity.

82.　The misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class and Subclass members reasonably, justifiably, and detrimentally relied, caused damage to Plaintiffs and Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.  Plaintiffs and Class Members have and will continue to suffer damages in the form of lost money from the purchase price of the hotel rooms.

CLASS ACTION COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a.   For an order certifying the nationwide Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and California Subclass, and Plaintiffs' attorneys as Class Counsel to represent the members of the Class and Subclasses;

b.   For an order declaring the Defendant's conduct violates the statutes referenced herein;

c.   For an order finding in favor of Plaintiffs, the nationwide Class, and the Subclass on all counts asserted herein;

d.   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.   For an order of restitution and all other forms of equitable monetary relief;

g.   For an order requiring Defendant to undertake a corrective advertising campaign;

h.   For injunctive relief as pleaded or as the Court may deem proper;

i.   For an order awarding Plaintiffs and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit; and

j.   Granting such other and further relief as may be just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury of all issues so triable.

CLASS ACTION COMPLAINT

Dated: March 5, 2021                    **BURSOR & FISHER, P.A.**

By: _____/s/ L. Timothy Fisher_____

L Timothy Fisher (State Bar No. 191626)
Blair E. Reed (State Bar No.316791)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        breed@bursor.com

*Attorneys for Plaintiffs*

---

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiffs in this action.  Plaintiffs Andre Galvan and Lucinda Lopez reside in Agoura Hills, California.  Plaintiff Abdelsayad resides in San Diego, California.  Plaintiff Ciglar resides in Castro Valley, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Southern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 5th day of March, 2021.


*/s/ L. Timothy Fisher*

L. Timothy Fisher

CLASS ACTION COMPLAINT